## House v. House.

Oct. 23, 1945.

A. D. Hall and S. V. Little for appellant.

John M. Lyttle, Carl Lyttle and A. T. W. Manning for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming in part, reversing in part.

Edna House instituted this action to obtain a divorce from her husband, Roy House, and also for alimony and custody of their two year old child. The following quotation from her petition sets forth the ground upon which she sought to obtain a divorce: "The plaintiff, Edna House, says that she and the defendant, Roy House were legally inter-married to and with each other in this County on the 3d day of August, 1940, and have lived together as man and wife from said date until the 2d day of July, 1944, at which time as a climax of a series of beatings and abuses which he has kept up for more than twelve months and in fact for more than two years last past, he beat her up in a most shameful way and manner and she yet carries a goodly number of bruises, and which she alleges that he has an outrageous

temper in him, and in fact he has habitually beat and abused her in such a cruel and inhuman manner for the last two years which indicates a settled aversion to her, and which has destroyed permanently her peace and happiness, and all of which cruelties have been getting continuously worse if possible for the last more than twelve months. She says she and the defendant are now husband and wife." In his counterclaim Roy House sought custody of the child and a divorce in his behalf. After hearing testimony orally, the chancellor dismissed the appellant's petition.

Edna was 17 years of age and Roy was 18 when they were married in 1940. For two years they lived in the home of Roy's parents. From then until the time of the separation they lived a short distance from the House residence. While Edna testified that Roy's mother interfered with their home life and that he had frequently beaten and abused her, the separation seems to have been caused by a difficulty which arose late one Sunday afternoon.

In brief, Edna's version is that after they had had supper and she was fixing to give the child his cod liver oil and bathe him Roy said he was going to take him over to the home of his parents. To this she objected. He then grabbed her by the hair and threw her across a chair, dragged her through the dining room, threw her on a sofa in the living room and beat her unmercifully. She said also that Roy's mother threatened to strike her with a chair and told Roy to kill her. She immediately left and went to the home of her parents, where she has remained. Roy's version is that he asked Edna what she was going to do with a tub of beans, and she said she was going to take them to her mother. He asked her what they were going to do for canned stuff and she got mad. When he started to milk, the child asked him if he could go along, to which he consented, and Edna said he was not going. Edna then grabbed a case knife and struck at him. The knife fell from her hand and she took a curtain pole and hit at him. He took the pole away from her and started out the door with his milk buckets and then Edna grabbed a butcher knife and started at him and said, "If I can't kill you, I will have it done." He slapped her and tried to get the knife away from her. She went in and sat down in the living room and said, "I've got you now where I have been wanting

you. Dad said if I could ever get you to hit me that I had the law on you.''

After the separation Roy made numerous attempts to get his wife to return to their home, but she refused to do so. He wrote her a letter in which he begged her to return to start life anew in order that they might maintain a home for their child and their expectant one. Edna replied that she was unwilling to live near Roy's parents, and for him to bring the child over to her home, and they would talk things over. On the witness stand she said, however, that she was afraid to live with Roy again. Several witnesses said that they saw Edna a few days after the separation and her face was bruised. Dr. Webb testified to the same effect.

The following quotation from the chancellor's opinion and judgment sets forth his reasons for dismissing Edna's petition, along with the answer and counterclaim:

''The plaintiff appeared before this Court shortly after the trouble seeking injunctive relief, and she had some bruises and scratches upon her face at that time, which in the Court's opinion were not made or caused by slapping, nevertheless they were not serious. There is a great deal in this record concerning the parents of both the plaintiff and the defendant, and this court needs no evidence as to the character of citizens that Albert House and his wife are, or as to the character of citizens that Henry Melton and his wife are, the Court well knows that there are none better, but it appears that the weight of the evidence in this case is to the effect that the mothers of the plaintiff and the defendant have had more or less to do with this trouble, which is quite often the case. The plaintiff offers for witness one Dr. G. P. Webb, who is a good friend to both families, and I here quote a part of the evidence of Dr. Webb:

'' 'Q. Did he say anything about his mother causing any trouble between them? A. Well he said his mother and her mother were to blame for their trouble that they had.' And on re-cross examination he was asked, 'What his mother had done or said to cause the trouble,' and he answered, 'My recollection is that his mother would want things her way and Mrs. Melton would want things her way, and that brought about the

difference, and that Edna would naturally take her mother's advice, and I cracked some joke with him and said, and 'You take your mother's advice, but the best thing you all can do is to get away from both sides and get back together.' In the opinion of the Court that was friendly and good advice to the defendant, and would be friendly and good advice to the plaintiff.

"The bathing of the baby and the giving of the beans to the plaintiff's mother is too small a matter for a husband and wife who have one small child and by this time I presume another smaller child, to be divorced about, and it is the opinion of the Court that both the plaintiff and the defendant's parents are what we call 'good Livers' and have shown according to this record a great deal of interest in this couple, and they both, the plaintiff and the defendant appear to think a great deal of each other, too much to let small matters stand in their way of future happiness, and the Court feels that it is the duty of these two people, being young and a family well on the way to bury all troubles and to go ahead as they have heretofore. The Court further feels that it would be wrong to divorce these two parties and cause them to remarry and it is the opinion of the Court and he so finds and holds that there is not sufficient evidence in this record to divorce these parties or to require the defendant to abandon his home or to heap a burden upon him that he can not meet."

While we are not wholly free from doubt as to the correctness of the chancellor's ruling on the divorce phase of the case, we have decided to affirm that part of his judgment. He knows the parties and their parents, and heard the testimony in open court. His reasons for refusing to grant a divorce seem to be based on common sense. The child custody question is another matter. We gather from the record that Edna was expecting to bear a child in October, 1944. If that child is living, in all probability she has it with her. Likewise, we presume that Roy (or his parents) still has custody of the other child, who is now between three and four years of age. It is the policy of this Court to award the custody of a child of tender years to its mother if she be a person of good moral character and in a position to furnish it a suitable home. We find nothing in the record which would reflect upon Edna's character,

to any material extent, and it is shown conclusively that her parents, with whom she is living, maintain a good home.

Under the circumstances, we reverse that part of the judgment, with directions for the chancellor to determine the status of the children.